UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

PAUL DAVID MOTT,         )
                            )
         Plaintiff,      )
                            )
v.                       )     No.:  3:10-CV-270
                            )            (VARLAN/GUYTON)
JASON DAVIS,           )
                            )
         Defendant.    )

## MEMORANDUM OPINION

This civil action is before the Court on the Motion for Summary Judgment [Doc. 9], submitted by defendant, Trooper Jason L. Davis ("Trooper Davis"). Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Trooper Davis moves for summary judgment on all claims asserted by plaintiff, Paul David Mott. Plaintiff has responded in opposition [Doc. 14], and Trooper Davis has filed a reply brief [Doc. 15]. The Court has reviewed the motion and the parties' responsive and reply briefs, along with the supporting affidavits, depositions, and exhibits, including the audio/video DVD submitted by Trooper Davis [Docs. 9, 10, 11, 14, 15]. After careful consideration, and for the reasons explained herein, the Court will grant the motion for summary judgment.

## I.    Facts[1]

Trooper Davis, a police officer, is employed by the Tennessee Highway Patrol and received training for police procedures for investigating suspected driving under the

---

[1]The facts of plaintiff's arrest are largely undisputed [*See* Doc. 14, p. 2].

influence ("DUI") violations from the National Highway Traffic Safety Administration (the "NHTSA"). Around December 2, 2009, plaintiff was driving a tractor-trailer truck on I-75 North from Alabama to Kentucky. Plaintiff stopped the truck at the Knox County scales (the "scales"), where he was chosen for a random inspection. Plaintiff was instructed to stop and to come inside the scales house. Trooper Davis, who was stationed at the scales house, was assigned to conduct the random inspection. Prior to Trooper Davis's inspection, his sergeant, Denton Smith ("Sergeant Smith"), who was ending his shift, observed plaintiff and informed Trooper Davis that he detected indicators of intoxication. Trooper Davis asked plaintiff for his logbook, which was required for the distance plaintiff was traveling. Plaintiff did not have a logbook.

According to Trooper Davis, as he spoke with plaintiff inside the scales house, he noticed that plaintiff's speech was slurred, that plaintiff had a bloodshot eye, and that plaintiff's eyes were watery and glazed over. According to plaintiff's deposition testimony, his speech was slurred because he has false teeth and a speech impediment. Plaintiff did not tell the trooper that this was the reason for his slurred speech. During his initial interaction with plaintiff, Trooper Davis noted that a preliminary test demonstrated nystagmus in plaintiff's eyes, which is an indicator of intoxication. Trooper Davis's lieutenant confirmed that plaintiff demonstrated nystagmus. Trooper Davis also asked plaintiff whether he had consumed any alcohol and plaintiff stated that he had not. According to Trooper Davis's deposition testimony, at this time he suspected plaintiff of drug intoxication but did not

suspect that plaintiff was under the influence of alcohol because plaintiff did not smell like alcohol.

Trooper Davis preformed five field sobriety tests on plaintiff. According to Trooper Davis, he took plaintiff outside the scales house so the tests could be videotaped and audiotaped.[2] According to Trooper Davis's testimony, he conducted the "full battery" of field sobriety tests on plaintiff, including the horizontal gaze nystagmus (the "HGN test), the walk and turn test, the one-leg stand test, the finger dexterity test, and the finger-to-nose test [Doc. 9-3, pp. 7-8].

During the HGN test, Trooper Davis observed that plaintiff's eyes did not pursue smoothly and that he exhibited nystagmus in both eyes. According to Trooper Davis, this gave him four "clues" which indicated drug intoxication [Doc. 9-3, pp. 10-11]. On the walk and turn test, Trooper Davis concluded that plaintiff performed this test improperly because he raised his left arm on the second nine steps [*Id.*, pp. 11-12, 15-16; Doc. 14, p. 2]. Trooper Davis also concluded that plaintiff performed the one-leg test improperly [Doc. 9-3, pp. 11-12]. However, Trooper Davis testified that he did not count the one-leg test because plaintiff told him that he had knee problems [Doc. 9-2, pp. 11-12]. Trooper Davis also noted that it took plaintiff thirty seconds to count to twenty and, according to the trooper, this indicated that plaintiff had taken a depressant [*Id.*; Doc. 14, p. 2]. Trooper Davis also testified that plaintiff completely missed the tip of his nose and held his finger there when he was

---

[2]Trooper Davis has submitted the video/audio DVD of the tests as an exhibit to his motion for summary judgment [*See* Doc. 11].

supposed to move it immediately [*Id.*, pp. 11-12, 15-16]. In regard to the finger dexterity test, Trooper Davis testified that he noted that plaintiff missed on number 4 [*Id.*, pp. 15-16]. At the conclusion of the finger dexterity test, Trooper Davis placed plaintiff under arrest for violating the laws against driving under the influence. *See* Tenn. Code Ann. §§ 40-7-103(8); 55-10-401; 55-10-408. Trooper Davis then completed an alcohol/drug influence report, which reflected the trooper's findings [Doc. 9-3, pp. 15-16]. After the arrest, Trooper Davis asked plaintiff to take blood and breath tests. Plaintiff consented to both tests and tested negative for both the presence of alcohol and the presence of other drugs in his system. Trooper Davis also asked plaintiff whether he was on any medication. Plaintiff responded that he was not.

After administering the breath test, Trooper Davis handcuffed plaintiff's hands behind his back, pursuant to police department procedure, and told plaintiff that he was going to search him outside the scales house so a video of the search would show that he was not hurting plaintiff. After fastening the handcuffs, plaintiff told the Trooper Davis that "You're not hurting me." According to Trooper Davis, he then inserted his finger between plaintiff's wrist and the handcuff bar to make sure the handcuffs were not too tight.

Trooper Davis's search of plaintiff's person was recorded on video and audio. The search revealed three wallets and a large amount of cash. During the search, plaintiff did not exhibit any signs of pain and did not complain about pain, other than knee pain. After the search, Trooper Davis placed plaintiff in a patrol car. Trooper Davis and his lieutenant then searched plaintiff's truck. The search revealed four cell phones, cash in twenty-dollar

4

bundles of one-dollar bills, and four bottles of prescription medication—Propoxy (pain medicine) with a fill date of July 2007, Cyclobenzaprine (muscle relaxer) with a fill date of May 2004, Ciproflaxin (antibiotic) with a fill date of September 2009, and Cialis with a fill date of November 2009 [Doc. 9-2, ¶ 5].

Following these searches, Trooper Davis transported plaintiff to a hospital in a patrol car. During the transport from the scales house to the hospital, plaintiff did not complain of any pain and did not exhibit or show any signs of pain [Doc. 9-1, ¶ 6; Doc. 11]. At the hospital, plaintiff asked Trooper Davis whether "there [is] any way you can put the handcuffs in front of me? My shoulder's bothering me." [Doc. 9-2, pp. 11-12]. Trooper Davis responded, "No, [the handcuffs] ha[ve] to be behind your back." [*Id.*]. There was no indication of swelling, discoloration, or other problem with plaintiff's hands or wrist at the hospital. After the hospital, plaintiff was transported to jail. During the transport from the hospital to the jail, plaintiff did not complain of any pain and did not exhibit or show any signs of pain. There was no swelling, discoloration, or other problem with plaintiff's hands or wrist when Trooper Davis removed the handcuffs at the jail. Plaintiff did not complain to the jail staff about any pain.

Six days after plaintiff was taken to the hospital, he went to an emergency room because, according to plaintiff, his hands were so badly swollen from being handcuffed that he could not work for a week [Doc. 9-2, pp. 9-10]. The medical staff x-rayed plaintiff's right shoulder. According to plaintiff's deposition testimony, the medical staff told him screws had not come out of his shoulders and that his hands might have swelled up because of the

5

way his arms were placed behind his back [*Id.*, p. 8]. The medical staff did not prescribe plaintiff any medication but told plaintiff to take his regular medication and to see his treating physician for problems [*Id.*, pp. 7-9].

In the complaint, plaintiff alleges that Trooper Davis lacked probable cause to arrest him for driving while under the influence and that Trooper Davis used excessive force in violation of the Fourth, Fifth, and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983. Plaintiff also alleges state-law claims of assault, malicious prosecution, and outrageous conduct. In the motion for summary judgment, Trooper Davis submits that based on the undisputed facts, there is no genuine issue of material fact in regard to any of these claims and he is entitled to judgment as a matter of law. He asserts that plaintiff has not proved a constitutional violation, a state-law violation, or that the rights allegedly violated were clearly established. Alternatively, Trooper Davis asserts that he is entitled to qualified immunity on all plaintiff's federal and state-law claims. Plaintiff has filed a response, conceding that, following discovery, summary judgment is appropriate in regard to his claims for violations of the Fifth and Fourteenth Amendment and for his claim of outrageous conduct. Plaintiff asserts, however, that there are material facts in dispute in regard to his remaining federal and state-law claims.

## II.    Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears

6

the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are

7

any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## III.    Analysis

### A.    Civil Rights Claims

Plaintiff has brought civil rights claims against Trooper Davis pursuant to 42 U.S.C. § 1983. "[Section] 1983 by its terms[,] does not create any substantive rights but rather merely provides remedies for deprivations of rights established elsewhere." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (quotation and citation omitted). To prevail on a § 1983 claim, plaintiff "must establish that a person acting under color of state law deprived [him] of a right secured by the Constitution or laws of the United States." *Waters v. City of Morristown*, 242 F.3d 353, 358-59 (6th Cir. 2001).

The U.S. Supreme Court has held, however, that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity, which Trooper Davis asserts, "is an affirmative defense that must be pleaded by a defendant official." *Id.* at 815. To determine whether an officer is entitled to qualified immunity, the U.S. Court of Appeals for the Sixth Circuit follows a two-step analysis: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly

8

established." *Causey v. City of Bay City*, 442 F.3d 524, 528 (6th Cir. 2006) (quoting *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005) (internal citation omitted)).[3]

## B.     Excessive Force

Plaintiff argues that Trooper Davis used excessive force because the trooper denied him a reasonable amount of relief after plaintiff made a single request to Trooper Davis that the handcuffs be moved to the front of his person.

Claims regarding a police officer's use of excessive force in the context of an arrest or other seizure are governed by the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). In *Graham v. Connor*, the Supreme Court established guidelines to be

---

[3]As the Sixth Circuit explained in *Estate of Carter*:

> Panels of this court occasionally employ a three-step qualified immunity analysis, as opposed to the two-step analysis set forth here. As two recent opinions indicate, both the two-step approach and the three-step approach can be said to capture the holding of *Saucier v. Katz*, 533 U.S. 194 (2001). *Compare Dunigan v. Noble*, 390 F.3d 486, 491 n.6 (6th Cir. 2004) (taking the two-step approach), *with Sample v. Bailey*, 409 F.3d 689, 696 n.3 (6th Cir. 2005) (taking the three-step approach). The third step is "whether the plaintiff offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 905 (6th Cir. 2004) (internal quotation omitted). In cases subsequent to *Saucier*, the Supreme Court has not formally broken up the two steps prescribed by *Saucier* into three steps, *see, e.g., Brosseau v. Haugen*, 543 U.S. 194 (2004); *Groh v. Ramirez*, 540 U.S. 551, 563 (2004), but the three-step approach may in some cases increase the clarity of the proper analysis. In many factual contexts, however, including this one, the fact that a right is "clearly established" sufficiently implies that its violation is objectively unreasonable. *Cf. Champion*, 380 F.3d at 905.

408 F.3d at 311 n.2. Because, as found *infra*, the Court holds that Trooper Davis did not violate the Constitution, it is unnecessary to address the "clearly established" prong. *See, e.g., Causey*, 442 F.3d at 528 (following the two-step test because the plaintiffs failed to establish that the officers violated their Fourth Amendment rights to be free from unreasonable searches).

followed by lower courts in evaluating excessive force claims in the course of an arrest or detention. Because these claims involve seizures, the Fourth Amendment "reasonableness" test is the appropriate standard by which such claims are judged. *Id.*, 109 U.S. at 394-95. This standard requires "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 395 (internal quotations and citation omitted). Furthermore, Fourth Amendment jurisprudence "has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it[,]" and the test of reasonableness requires careful attention to the facts and circumstances of each case, including the severity of the crime, whether the suspect poses an immediate threat to the safety of the officer or others, and whether the suspect is actively resisting or attempting to evade arrest. *Id.* at 396. *See Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985) (noting that the question is whether the totality of the circumstances justifies the particular sort of seizure). As noted by the Supreme Court:

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Graham*, 109 U.S. at 396. Under *Graham*, courts reviewing excessive force claims "must avoid substituting . . . personal notions of proper police procedure for the instantaneous decision of the officer at the scene. We must never allow the theoretical, sanitized world of

our imagination to replace the dangerous and complex world that policeman face every day. What constitutes 'reasonable' action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure." *Boyd v. Baeppler*, 215 F.3d 594, 602 (6th Cir. 2000) (reversing the district court's denial of summary judgment on an excessive force claim and holding that the officers were entitled to qualified immunity) (quoting *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992)).

The foregoing standards make clear that depending on the specific circumstances of a case, some limited force may be reasonable in the context of a seizure. The Court's review of the undisputed evidence in this case establishes that there is no genuine issue of material fact that Trooper Davis's use of force was reasonable and that he is entitled to judgment as a matter of law on plaintiff's excessive force claim.

District courts within the Sixth Circuit have addressed an officer's request for summary judgment in regard to a plaintiff's claim that a handcuffing constitutes excessive force in violation of the Fourth Amendment. For example, in *Nemeckay v. Rule*, the court found that the plaintiff's excessive force claim after being handcuffed failed as a matter of law because there was no objective evidence of excessive force by the officer, besides the plaintiff's allegations that he repeatedly told the officer that the handcuffs were too tight and were causing him injury. *Id.*, 894 F. Supp. 310, 315 (E.D. Mich. 1995). In dismissing the plaintiff's excessive force claim, the court noted that the officer testified that she did not recall the plaintiff making any complaints, that the examining physician testified that he

found no evidence of harm to plaintiff, and that the only evidence supporting the plaintiff's

claim was his deposition testimony. *Id.*

The same district court distinguished the facts of *Nemeckay* in determining a second

plaintiff's claim of excessive force following a handcuffing. *Patrick v. Vrablic*, No. 04-CV-

73270-DT, 2005 WL 3088346 (E.D. Mich. Nov. 16, 2005). In *Patrick v. Vrablic*, the court

noted that the plaintiff:

> [H]as proffered more than merely his own testimony of having
> repeatedly complained that [the officer] that his handcuffs were too
> tight[.] He also has presented evidence of having sustained physical
> injury. Both Plaintiff's daughter and his friend . . . testified that the
> swelling and scars on [the plaintiff's] wrist were still visible two to
> three weeks after his arrest, and photographs . . . bear this out. Further,
> [the plaintiff's] doctor testified that [the plaintiff] was still suffering
> from paresthesia and numbness in his right wrist nearly a month later
> and an electromyograph showed that [the plaintiff] suffered from
> neuropathy and nerve damage which the doctor opined was the result
> of being handcuffed too tightly[.]

*Id.* at *5. The court concluded that "[t]his is far more evidence of excessive force than the

mere testimony of the plaintiff of having complained about the handcuffs being too tight

which was found insufficient in *Nemeckay* to sustain a Section 1983 claim." *Id.*

The Sixth Circuit has also weighed in. *See, e.g.*, *Martin v. Heideman*, 106 F.3d 1308

(6th Cir. 1997) (finding an issue of fact as to whether the officer used excessive force when

the plaintiff testified that he had complained to the officer several times and submitted a

physician's deposition testimony that emergency room records from the date of arrest showed

that the plaintiff had complained of a sore wrist and contusions on his arm); *Kostrzewa v.*

*City of Troy*, 247 F.3d 633 (6th. Cir. 2001) (reversing the entry of summary judgment in

favor of the defendant officer on the plaintiff's excessive force claim following a handcuffing and noting that the plaintiff had alleged that he repeatedly complained to the officers, that the officers ignored his complaints and drove recklessly so as to toss the plaintiff around in the patrol car and cause additional injury, and that there was also the testimony of a physician that the plaintiff's wrists were swollen following his arrest); *Neague v. Cynkar*, 258 F.3d 504, 508 (6th Cir. 2001) (reversing the district court's denial of the defendant officer's request for summary judgment, and explaining that the "[p]laintiffs do not allege physical injury . . . the police loosened the cuffs when [the plaintiff] so requested [and the plaintiff] agreed in her deposition that she was not 'claiming any physical injury as a result of the handcuffing'").

In *Meadows v. Thomas*, 117 F. App'x 397 (6th Cir. 2004), the Sixth Circuit summarized the law that in order for a plaintiff to establish a viable Fourth Amendment claim for excessive forceful handcuffing, he must:

> (1) allege that he complained to the officers that the handcuffs were too tight (or that there is evidence to infer that the officers should have known that the handcuffs were too tight); and (2) as a result of being left in handcuffs that were applied to tightly, he incurs injury to his wrists.

*Id.* at 405. *See, e.g., Lyons v. City of Xenia*, 417 F.3d 565, 575-76 (6th Cir. 2005) (noting that "[n]ot all allegations of tight handcuffing, however, amount to excessive force. In order to reach a jury on this claim the plaintiff must allege some physical injury from the handcuffing, and must show that officers ignored plaintiff's complaints that the handcuffs were too tight").

The record evidence in this case does not rise to the level of the evidence in the above-noted cases where courts have found genuine issues of fact in regard to excessive force claims predicated on a handcuffing. It is undisputed that plaintiff only complained once to Trooper Davis about any pain resulting from the handcuffing. Plaintiff did not complain when Trooper Davis first placed the handcuffs on him, did not complain in the patrol car on the way to the hospital, did not complain on the way to the jail, and has not alleged that he exhibited or showed any non-verbal signs of pain. Plaintiff also did not complain of any pain once he arrived at the jail. In addition, when Trooper Davis initially put the handcuffs on plaintiff, plaintiff explicitly stated that he was not in pain. Furthermore, the only evidence that plaintiff incurred an injury to his wrists because of the handcuffing is plaintiff's deposition testimony.

While plaintiff argues that the low-severity of the offense he was charged with and his lack of dangerousness and resistance show that the force used by Trooper Davis was excessive, the Court disagrees. The handcuffing of an individual, pursuant to a police department's policy, when the individual only complained once of pain, does not constitute an unreasonable use of force. Plaintiff also argues that it was unreasonable for Trooper Davis to view him as potentially volatile. The Court disagrees, as plaintiff has not disputed Trooper Davis's assertion that based on his experience and training as an officer, the bottles of medicine and the large amounts of cash Trooper Davis recovered during the search are characteristics of a drug user or dealer and that such persons may behave in a volatile manner.

14

In sum, the Court finds that the totality of the circumstances, based on the perspective of a reasonable officer at the scene, does not indicate that Trooper Davis's conduct in refusing to move the handcuffs was unreasonable and constituted excessive force, especially when plaintiff only once indicated that he was in pain and when the only evidence of injury following the handcuffing is plaintiff's own deposition testimony.

## C.  Probable Cause

Plaintiff claims that Trooper Davis did not have probable cause to arrest him for driving under the influence.  Trooper Davis has moved for summary judgment because he argues that the undisputed facts show that he had probable cause to arrest plaintiff.  Thus, the Court now turns to whether plaintiff has alleged facts which, when viewed in the most favorable light to plaintiff, demonstrate that Trooper Davis's conduct violated a constitutional right.

"It is clearly established that arrest without probable cause violates the Fourth Amendment." *Donovan v. Thamas*, 105 F.3d 291, 297-98 (6th Cir. 1997).  Probable cause is also required under Tennessee law.  *See Hudson v. Pickering*, No. 89-135-II, 1989 WL 134748, at *1 (Tenn. Ct. App. Nov. 8, 1989).  Probable cause necessary to justify an arrest exists when, based upon the facts and circumstances within the officer's knowledge at the moment of the arrest, a prudent man would conclude that the arrestee had committed or was committing a criminal offense.  *See Wilson v. Morgan*, 477 F.3d 326, 334 (6th Cir. 2007) (citations omitted).  Probable cause is assessed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Kostrzewa v. City of Troy*, 247

F.3d 633, 639 (6th Cir. 2001) (citation omitted). The fact that an arrestee is later found innocent has no affect on whether probable cause existed at the time of the arrest. *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988); *see also Pierson v. Ray*, 386 U.S. 547, 554 (1967) (citing Restatement (Second) Torts § 121 (1965)).

Plaintiff was arrested for violating the laws against driving under the influence, *see* Tenn. Code Ann. §§ 40-7-103(8); 55-10-401; 55-10-408, which make "[i]t . . . unlawful for any person to drive . . . any automobile or other motor driven vehicle on any of the public roads and highways . . . while . . . [u]nder the influence of any intoxicant, marijuana, controlled substance, drug, substance affecting the central nervous system or combination thereof that impairs the driver's ability to safely operate a motor vehicle by depriving the driver of the clearness of mind and control of himself which he would otherwise possess[.]" T.C.A. § 55-10-401(1). Therefore, in order to have probable cause to arrest plaintiff, Trooper Davis had to reasonably believe that plaintiff was under the influence of an intoxicant as stated in § 55-10-401.

Given the foregoing, and the facts and circumstances available to Trooper Davis at the time of the arrest, the Court concludes that he had probable cause to arrest plaintiff. Trooper Davis first observed plaintiff with slurred speech, a bloodshot eye, and watery, glazed-over eyes. Sergeant Smith also informed Trooper Davis of his opinion that plaintiff exhibited indicators of intoxication. In addition, Trooper Davis, in a observation confirmed by his lieutenant, determined that plaintiff exhibited nystagmus. After speaking with plaintiff, Trooper Davis performed five field sobriety tests and, based upon his training and

16

experience, testified that it was his belief that plaintiff failed at least four of the tests, in addition to exhibiting slurred speech.[4]  The Court concludes that this evidence available to Trooper Davis at the time of plaintiff's arrest constitutes a sufficient factual basis for a finding of probable cause.

Plaintiff argues that Trooper Davis should have inquired into the reason for his slurred speech and should not have used his speech to support the trooper's belief that plaintiff exhibited indicators of intoxication.  He asserts that Trooper Davis had no way of knowing whether the characteristics he found indicative of intoxication—slurred speech, a bloodshot eye, and watery, glazed-over eyes—were "simply indicative of [plaintiff's] physiology." [Doc. 14, p. 8].  Plaintiff, however, ignores Trooper Davis's deposition testimony that based on his training and experience, these characteristics are indicative of intoxication. Furthermore, plaintiff never offered an explanation for his slurred speech to Trooper Davis. In addition, the Sixth Circuit has noted that once a law enforcement officer has probable cause to make an arrest, he need not investigate further.  *Klein v. Long*, 275 F.3d 544, 551 (6th Cir. 2001) (noting that while police officers must take into account both inculpatory and exculpatory evidence, "once a police officer *has* sufficient probable cause to arrest, he need not investigate further").  In this case, Trooper Davis noted exculpatory evidence, such as his observation that plaintiff did not smell like alcohol, and inculpatory evidence, such as the state of plaintiff's eyes, his slurred speech, nystagmus, and plaintiff's performance of the

_____

[4]Trooper Davis testified at his deposition that he did not count the one-leg stand test.

17

field sobriety tests. Had Trooper Davis not counted plaintiff's slurred speech, Trooper Davis could still have based a finding of probable cause on the other indicators of intoxication—the bloodshot eye, the nystagmus, and the failed field sobriety tests.

Plaintiff also argues that nystagmus is not always an indicator of intoxication, that it is not an indicator of drug intoxication, and because Trooper Davis did not suspect plaintiff of alcohol intoxication but of drug intoxication, it was unreasonable for the trooper to have based a finding of probable cause on the presence of nystagmus. The Court disagrees. First, the Court notes that Trooper Davis did not base his finding of probable cause solely on the presence of nystagmus. Second, the excerpt from the NHTSA manual regarding the HGN test does not state that the test is *only* an indicator of alcohol intoxication and not of drug intoxication [Doc. 14-2, ¶¶ 2-4]. It is also undisputed that both Trooper Davis and his lieutenant detected nystagmus and undisputed that the presence of nystagmus is used by officers trained in field sobriety testing procedures as an indicator of intoxication. In addition, while plaintiff argues that his performance of the field sobriety tests was exemplary for someone who has had a knee replacement and who had been standing in the cold, and that Trooper Davis unreasonably concluded that plaintiff failed the tests, there is no dispute that the trooper made his findings based on his observation of plaintiff's performance of the tests and his background experience and training in DUI and field sobriety procedures. Finally, the fact that the charge against plaintiff was later dismissed does nothing to vitiate the previous finding of probable cause. *Criss*, 867 F.2d at 262.

In sum, the Court concludes that Trooper Davis had probable cause to arrest plaintiff for violating the laws against driving under the influence and therefore did not violate a constitutional right of plaintiff. The Court, therefore, need not reach the second part of the qualified immunity analysis, delineated in *Saucier*—whether the constitutional right violated was clearly established. "If no constitutional right would have been violated were [the plaintiff's] allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.

### D.    State-Law Assault Claim

Plaintiff argues that, for the same reasons Trooper Davis's actions were objectively unreasonable for purposes of the Fourth Amendment, his actions were objectively unreasonable for purposes of his state-law assault claim. *See McCrary v. City of Memphis*, No. W2004-01840-COA-R3CV, 2005 WL 452788, at *7 (Tenn. Ct. App. Feb. 25, 2005) (considering a plaintiff's state-law assault claim and affirming the trial court's application of the *Graham* court's "reasonably necessary" and "objectively reasonable" standards); *see also Anderson v. Antal*, 191 F.3d 451 (Table), 1999 WL 717993, at *6 (6th Cir. 1999) (affirming the judgment of the district court dismissing the plaintiff's assault and battery claim under Michigan law because the officer's actions were objectively reasonable for purposes of a § 1983 claim). Here, for the same reasons the Court has concluded that there are no genuine issues of fact in regard to plaintiff's excessive force claim or that Trooper Davis lacked probable cause, the Court finds that Trooper Davis's actions were objectively

reasonable for purposes of plaintiff's state-law assault claim and Trooper Davis is entitled to summary judgment in regard to this claim.

### E. State-Law Malicious Prosecution Claim

The elements of a malicious prosecution claim under Tennessee law are well settled. A plaintiff must show: (a) that a prior lawsuit or judicial proceeding was brought against the plaintiff without probable cause; (b) that the prior lawsuit or judicial proceeding was brought against the plaintiff with malice, and (c) that the prior lawsuit or judicial proceeding terminated in the plaintiff's favor. *See Parrish v. Marquis*, 172 S.W.3d 526, 530 (Tenn. 2005); *Roberts v. Fed. Express Corp.*, 842 S.W.2d 246, 248 (Tenn. 1992). Under Tennessee law, probable cause is established where "facts and circumstances [are] sufficient to lead an ordinarily prudent person to believe the accused was guilty of the crime charged." *Roberts*, 842 S.W.2d at 248 (citations omitted).

In this case, it is undisputed that the charge against plaintiff was dismissed. However, for the same reasons given in the Court's ruling regarding plaintiff's claim for arrest without probable cause, the Court concludes that plaintiff has not satisfied the remainder of the first element—that the proceeding against plaintiff was without probable cause. The undisputed facts demonstrate that Trooper Davis had probable cause to arrest plaintiff for violating the laws against driving under the influence, such probable cause based upon the facts and circumstances available to the trooper at the time of plaintiff's arrest, including the state of plaintiff's eyes, his slurred speech, nystagmus, and the failed field sobriety tests. Accordingly, as acknowledged by plaintiff, because his malicious prosecution claim rises and

falls with the determination of probable cause, the Court concludes that summary judgment is appropriate in regard to this claim. *See Majors v. Smith*, No. M2000-01430-COA-R3-CV, 2001 WL 219656, *3-*4 (Tenn. Ct. App. Mar. 7, 2001) (granting summary judgment for a malicious prosecution claim where the evidence showed there was probable cause for the arrest).

## IV.    Conclusion

Thus, and for the reasons explained herein, the Court finds summary judgment in Trooper Davis's favor is appropriate in respect to all plaintiff's claims.  Trooper Davis's motion for summary judgment [Doc. 9] will therefore be granted.  The Clerk will be directed to close this case.  An appropriate order will be entered.

ORDER ACCORDINGLY.


s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE